**ZEV HARDMAN**, SBN 289375
zev.hardman@hardman-law.com
2120 University Ave
Berkeley, CA 94704
Telephone: 510-730-1706
Fax: 510 680-3775

**JAMES BERTINI**, Colorado Bar
No. 22440 (*pro hac vice pending*)
jamesbertini@yahoo.com
423 Kalamath Street
Denver, CO 80204
303 572-3122

*Attorneys for Plaintiff, Charles Bertini*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| CHARLES BERTINI, | | |
|---|---|---|
| Plaintiff | \| | CASE NO. _____ |
| | \| | |
| v. | \| | |
| | \| | **COMPLAINT** |
| APPLE INC., | \| | |
| Defendant | \| | |
| _____ | \| | |

Plaintiff Charles Bertini, by his undersigned attorneys, alleges the following.

## I.      PARTIES

1.      Plaintiff Charles Bertini ("Bertini") is a citizen and resident of the State of Florida.

2.      Defendant Apple Inc. ("Apple") is a corporation having its principal office at One Apple Park Way, Cupertino, California.

## II.      JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Bertini's claims pursuant to the following sections of the Lanham Act:

15 U.S.C. § 1064 Cancellation;

15 U.S.C. § 1071 Appeal to Courts;

15 U.S.C. § 1119 Power of Court Over Registration;

15 U.S.C. § 1120 Fraud, Civil Liability;

15 U.S.C. § 1121 Jurisdiction of Federal Courts;

15 U.S.C. § 1127.

4.      This Court has personal jurisdiction over Apple. Apple is headquartered in this District. Also, most or all of the events or omissions giving rise to the claims occurred in this District

5.      Venue is proper in this District because Defendants conduct their ordinary business activities in this District, have focused a substantial portion of their conduct within this District, and generally engage in business in this District and have harmed Plaintiff in this District.

## III.      DIVISIONAL ASSIGNMENT

6.      This action is subject to assignment to the San Jose division because most or all of the events giving rise to the claims occurred in Santa Clara County.

## IV.      FACTS COMMON TO ALL CLAIMS

**A.      History of Bertini's Common Law Trademark Apple Jazz Which He Began Using in June 1985, and His Attempts to Register it at the USPTO Since 2016**

7.      Bertini began using his mark APPLE JAZZ in commerce in international Class 41 for entertainment services in June 1985 and he has maintained continuous use in commerce of his mark to date.

8.      After Bertini filed an application to register his common law mark APPLE JAZZ on June 5, 2016 (Serial No. 87060640), the U.S. Patent and Trademark Office examining attorney refused registration stating that there is a likelihood of confusion with (a) Apple Inc.'s service mark APPLE Reg. 4088195 (the "Mark"), and (b) the application to register APPLE MUSIC Serial No. 86659444, both in Class 41 for entertainment services. Bertini filed a Response to the Office Action and then the examining attorney suspended his application.

9.      Bertini timely filed a Notice of Opposition ("Opposition") to the registration of APPLE MUSIC. In its Answer to the Opposition, Apple pleaded the Mark as an Affirmative Defense along with two other APPLE marks which were registered in Class 9 for goods.

10.     On March 19, 2018 Bertini filed a Petition for Cancellation of the Mark ("Cancellation"). On October 28, 2018 Bertini filed an Amended Petition for Cancellation. On December 28, 2020 Bertini filed his Trial Brief in the Cancellation.  On February 23, 2021 his case was marked Submitted for Final Decision in the TTAB docket. Thereafter, no action was taken for one year.

11.     Regarding the Opposition to APPLE MUSIC, on April 16, 2021 the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office ("the Board", or "the TTAB") dismissed the Opposition by permitting tacking of an APPLE mark (previously owned by Apple Corps Limited) to APPLE MUSIC. Bertini filed an Appeal of this decision at the U.S. Court of Appeals for the Federal Circuit.

12.     However, in that April 16, 2021 decision on the Opposition case the Board found that "Opposer has established that his APPLE JAZZ mark as a whole is inherently distinctive" and "Opposer's earliest date of use of his APPLE JAZZ mark is June 13, 1985."

13.     On February 9, 2022 Bertini's Cancellation case of the Mark was suspended. The Suspension Order refers to 37 C.F.R. § 2.117(a): "Whenever it shall come to the attention of the Trademark Trial and Appeal Board that a civil action, another Board proceeding, or an expungement or reexamination proceeding may have a bearing on a pending case, proceedings before the Board may be suspended..."   In fact, the Opposition case came to the attention of TTAB when Bertini filed his March 19, 2018 Petition and he was required to respond to a box stating "Related Proceedings" and he responded "Opposition No. 91229891". Thus, during a period of four years the TTAB didn't think that the Opposition case may have a bearing on the Cancellation case.

14.    On February 17, 2022 Bertini filed a Motion for Reconsideration in the <u>Cancellation</u> case but *it was never considered*, no less decided, by the Board.

15.    In a precedential decision made April 4, 2023 the Federal Circuit reversed the Board's Decision in the <u>Opposition</u> case, stating "An opposer can block a trademark application in full by proving priority of use and likelihood of confusion for *any* of the services listed in the trademark application."  "Accordingly, Apple is not entitled to tack its use of APPLE MUSIC for live musical performances onto Apple Corps' 1968 use of APPLE for gramophone records. Because Apple began using the mark APPLE MUSIC in 2015, Bertini has priority of use for APPLE JAZZ as to live musical performances." *Bertini v. Apple Inc.,* 63 F.4th 1373, 1379, 1381; 2023 U.S. App. LEXIS 7935.

16.    On May 4, 2023, Bertini filed a Petition to the Director of the USPTO requesting that her office decide the <u>Cancellation</u> since the TTAB had not done so, at that time for more than two years.

17.    On October 31, 2023 Bertini filed a Petition for Writ of Mandamus with the Federal Circuit since the <u>Cancellation</u> case had not been decided by the Director or the Board, seeking an order requiring a decision to be made.

18.    Only on March 20, 2024 did the Board issue a Decision on the <u>Cancellation.</u>  It denied Bertini's Petition to Cancel, and stated: "At trial, Petitioner [Bertini] introduced official records of the USPTO showing that his pleaded application for APPLE JAZZ has been refused registration on the basis of a likelihood of confusion with the mark APPLE in the challenged registration. Petitioner thus has established and maintained his direct commercial interest and reasonable belief in damage proximately caused by the continued registration of the mark in the challenged registration."

19.    In this March 20, 2024 denial of the <u>Cancellation</u> the Board didn't view that the <u>Opposition</u> case (earlier decided in favor of Bertini at the Federal Circuit) had a bearing on the <u>Cancellation</u> case and stated "Petitioner … failed to make a prima facie showing of Respondent's abandonment of the APPLE mark as to the services in Respondent's challenged registration". Such decision could have been made promptly after the file was marked Submitted for Final Decision in the TTAB docket on February 23, 2021, but *the Board made Bertini wait more than three years* and miss the opportunity to file a simplified cancellation procedure promoted by the USPTO.

20.    Bertini appealed this decision of the <u>Cancellation</u> to the Federal Circuit and his appeal

was docketed on May 7, 2024.

21.    On May 20, 2024 pursuant to 15 U.S.C. § 1071(a)(1), Appellee Apple Inc. filed a Notice of Election to have all further proceedings between the parties conducted in federal district court as provided in 15 U.S.C. § 1071(b).  Thereafter the Court dismissed the appeal on June 5, 2024.

### B.    Registration of APPLE Reg. No. 4088195 (the Mark) and Apple's Promotion of its Goods and Services

22.    An application for standard character mark APPLE Reg. 4088195 (Serial No. 77428980) was filed in the USPTO by Apple on March 22, 2008 with filing basis sections 1(b) and 44(d) for following services in Class 41:

*"Education and training services, namely, arranging and conducting personal training, classes, workshops, conferences and seminars in the field of computers, computer software, online services, information technology, website design, and consumer electronics; arranging professional workshop and training courses; computer education training services; training in the use and operation of computers, computer software and consumer electronics; online journals, namely, blogs featuring general interest topics covering a wide variety of topics and subject matter; providing on-line publications in the nature of magazines, newsletter and journals in the field of computers, computer 5 software and consumer electronics; providing information, podcasts and webcasts in the field of entertainment via the Internet concerning movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events; digital video, audio and multimedia publishing services; providing entertainment information regarding movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events; providing information, reviews and personalized recommendations of movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events in the field of entertainment; entertainment services, namely, production of live musical performances; entertainment services, namely, providing live musical performances online via a global computer network; rental of digital entertainment content in the nature of movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events, by means of communications networks, namely,*

*provision of non-downloadable audio and audiovisual programs via an online video-on-demand service; providing a database of digital entertainment content in the nature of movies, music, videos, television, sports, news, history, science, politics, comedy, children's entertainment, animation, culture, and current events via electronic communication networks; entertainment services, namely, providing prerecorded audio and audiovisual content, information and commentary in the fields of music, concerts, videos, movies, television, books, news, sports, games and cultural events all via a global computer network."*

23.     A domain name www.apple.com ("apple.com" or "Apple's website") is being used as one of Apple's websites.

24.     The website apple.com shows goods and services offered by Apple to the public.

25.     Apple communicates with the public about certain new products, software, and services via its website at apple.com.

26.     A site Map of apple.com webpages is available for public view on the Internet Archive's Wayback Machine, at web.archive.org.

27.     This Site Map shows that during period November 5, 2011 – May 31, 2015 ("the Relevant Period") Apple offered goods on its website apple.com with individual brand names for each, e.g. Mac, iPod, iPhone, iPad, AppleTV, iOS, Apple Watch and iTunes and services e.g. iTunes, iTunes Store, Apple Store and iCloud.

28.     Registration No. 3359045 for trademark APPLE TV with date of first use March 21, 2007 is registered in Class 9 for computer hardware, computer networking hardware, set top boxes, digital electronic devices and computer software.

29.     The Apple TV device is like a DVD player.

30.     On September 1, 2010 a new Apple TV was announced, the announcement stating: "Apple TV set-up is quick and easy with a single HDMI cable connection." "Apple TV requires an 802.11b/g/n wireless network or Ethernet network, a broadband Internet connection and a high definition TV".

31.     On March 7, 2012 Apple announced the new Apple TV with a simpler, refined user interface: "With iTunes in the Cloud, customers can purchase and play their favorite movies and TV shows from the iTunes Store®"

32.     On September 9, 2015 Apple, Inc. announced the all-new Apple TV "with a new generation of high-performance hardware".

33.    It was not shown on Apple's website that during the Relevant Period Apple TV was advertised as a service.

34.    Apple filed for registration of service mark APPLE TV on March 24, 2019 on a 1(b) (an intent to use) basis.

35.    Apple filed for registration of service mark APPLE TV+ on July 17, 2019 on a 1(b) (an intent to use) basis.

36.    iTunes services for entertainment are well-known throughout the world. iTunes was announced on January 9, 2001.

37.    Registration Certificate No. 3532063 for standard character mark ITUNES was issued on November 11, 2008 including for services:

"*Entertainment services, namely, providing a web site and database featuring music, videos, television programs, motion pictures, current event and entertainment news, sports, games, cultural events, and entertainment-related programs; arranging and conducting of educational and entertainment exhibitions, workshops, and seminars in the field of music, videos, television programs, motion pictures, news, sports, games, cultural events, and entertainment-related programs; educational services in the nature of classes and training services offered over computer networks in the fields of university-level subjects and topics of general interest, namely, entertainment, music, concerts, videos, motion pictures, radio, television, news, sports, games and cultural events, and computer hardware and software applications; providing electronic publications for browsing over computer networks, namely, books, pamphlets, brochures, and newsletters on the subjects of education, entertainment, computer hardware and software applications, and a wide range of topics of general interest*"

38.    On October 7, 2008, Registration Certificate No. 3511416 for standard character mark iTunes Store was issued in Class 41 for:

"*Entertainment services, namely, providing prerecorded audio and audiovisual content, information and commentary in the fields of music, concerts, videos, movies, television, books, news, sports, games and cultural events all on-line via a global computer network*".

39.    Prior to and on November 11, 2011 and for more than three and one-half years after November 11, 2011, Apple offered iTunes software and services on its website and has stated *"Your Entertainment. Everywhere." "iTunes in the Cloud is part of iCloud. It's the new way to store your music and TV shows, and enjoy them on all your devices."*

40.     iTunes services for entertainment were well-known throughout the vast majority of the countries of the world.

41.     On February 19, 2014 Apple announced the first iTunes Festival to be held in the United States.

42.     The iTunes Festival started at London's Institute of Contemporary Arts in 2007. Apple hosted the iTunes Festival in London for eight years, and the iTunes Festival was renamed to Apple Music Festival in 2015.

43.     There was content available for public view on the website using the domain name itunesfestival.com during the period February 3, 2011 to May 30, 2015, and Apple Inc. was the registrant of the itunesfestival.com domain name during this period.

44.     There was content available for public view on the website using the domain name applemusicfestival.com during the period August 20, 2015 to December 27, 2017, and Apple Inc. was the registrant of the applemusicfestival.com domain name during this period.

45.     Apple has never been the registrant of the domain name applefestival.com during the Relevant Period.

46.     Apple Keynotes webpage was available for public view on Apple's website which stated: "The Apple Keynotes podcast offered video of the company's most important announcements, including presentations by Apple CEO Tim Cook."

47.     At the Apple Special Event held during October 2011, Apple CEO Tim Cook and team debuted iPhone 4S, iOS5, and iCloud.

48.     At the Apple Education Event held during January 2012, Phil Schiller, Apple's Senior Vice President of Worldwide Product Marketing, and team revealed iBooks 2 for iPad featuring iBooks textbooks, along with iBooks Author, and iTunes U app.

49.     At the Apple Special Event held during March 2012 Apple CEO Tim Cook and team debuted the third generation iPad and the new Apple TV.

50.     At the Apple WWDC 2012 Keynote Address Apple CEO Tim Cook and team unveiled Mac OS X Mountain Lion, iOS 6, and the all-new MacBook Pro.

51.     At the Apple Special Event held during September 2012 Apple CEO Tim Cook and team presented iPhone 5, iOS 6, iTunes, iPod touch, and iPod nano.

52.     At the Apple Special Event held during October 2012 Apple CEO Tim Cook and team unveiled the new iPad mini, fourth generation iPad with Retina display, new iMac, and the 13-inch MacBook Pro with Retina display.

53.     At the Apple WWDC 2013 Keynote Address Apple CEO Tim Cook and team presented iTunes Radio, iOS 7, next generation Mac Pro and updated MacBook Air.

54.     At the Apple Special Event held during September 2013 Apple CEO Tim Cook and team unveiled the new iPhone 5c and iPhone 5s.

55.     At the Apple Special Event held during October 2013 Apple CEO Tim Cook and team unveiled the new iPad Air, iPad mini with Retina display, updated MacBook Pro with Retina display and next generation iWork and iLife Apps for OS X and iOS.

56.     At the Apple WWDC 2014 Keynote Address Apple CEO Tim Cook and team unveiled OS X Yosemite, iOS 8 with iCloud Photo Library, new Messages features, the new Health app.

57.     At the Apple Special Event held during September 2014 Apple CEO Tim Cook and team unveiled iPhone 6 & iPhone 6 Plus, Apple Pay, and Apple Watch.

58.     At the Apple Special Event held during October 2014 Apple CEO Tim Cook and team unveiled iPad Air 2 and 27-inch iMac with Retina 5K Display.

59.     At the Apple Special Event held during March 2015 Apple CEO Tim Cook and team presented Apple Watch and unveiled the all-new MacBook, ResearchKit and HBO NOW.

60.     At the Apple WWDC 2015 Keynote Address Apple CEO Tim Cook and team presented Apple Music, OS X El Capitan, watchOS 2, iOS 9, News app and updates to Apple Pay.

61.     At the Apple Special Event held during September 2015 Apple CEO Tim Cook and team introduced iPhone 6s & iPhone 6s Plus, the all-new Apple TV with tvOS, iPad Pro, WatchOS 2 and iOS 9.

62.     At the Apple Special Event held during March 2016 Apple CEO Tim Cook and team introduced the 9.7-inch iPad Pro, iPhone SE, CareKit, and updates to Apple Watch, HealthKit, ResearchKit and tvOS.

63.     A main purpose of Apple Special Events is to promote certain Apple's goods and services that are the subject of each such Apple Special Event.

64.     An entertainment service APPLE was not introduced or promoted during the Relevant Period.

65.     An entertainment service APPLE was not listed on apple.com Site Map.

66.     Apple signed a Cloud Service License Agreement with Bertini in 2012.  The standard character word "apple" in this Agreement is used in reference to Apple, Inc.

67.    The Apple Website Terms of Use state: "Apple reserves the right…" and "Apple may make changes to any products or services offered on the Site…"

68.    The standard character word "apple" is used in every service agreement for Apple's customers and in Terms of Use agreement for every visitor of Apple's website in reference to Apple, Inc.

69.    Prior to its launch of Apple Music services, Apple introduced its iPod media player and iTunes suite of technologies and services.

70.    On April 28, 2003, Apple launched its iTunes Music Store and pioneered digital media services by publishing, and distributing online, an unrivaled and comprehensive catalog of music and audiobooks.

71.    By February 2013, Apple's iTunes Store services provided consumers with over 15,000 songs per minute and had set an aggregate sales record of 25 billion songs worldwide.

72.    From 2007 to 2014, Apple held the iTunes Music Festival, an annual multi-day music festival with live performance.

73.    In 2015 and 2016 Apple produced the Apple Music Festival.

74.    All of Apple's services and goods are well-known in the U.S. and abroad.

75.    During the <u>Opposition</u> trial Apple didn't produce evidence showing use of standard character mark APPLE for sales or advertising of services listed in the Registration Certificate of the Mark.

### FIRST CLAIM FOR RELIEF

**Cancellation of the Mark Due to Abandonment
Pursuant to 15 U.S.C. §§ 1064 and 1127**

76.    Bertini restates, re-alleges, and incorporates by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

77.    Prior to and on the date of the Statement of Use ("SOU") for application of APPLE mark and during a period of at least three years and six months after the date of the SOU the Mark was not used in commerce on or in connection with entertainment services listed in the Registration Certificate.

78.    The Mark APPLE did not function as a service mark to identify and distinguish Apple's entertainment services listed in the Registration Certificate and indicate their source

prior to and on the date of SOU and during a period of at least three years and six months after the date of the SOU.

79.    There is no direct association between the standard character mark APPLE and the entertainment services listed in the Registration Certificate or offered on Apple's website www.apple.com prior to and on the date of the SOU and during a period of at least three years and six months after the date of the SOU.

80.    Prior to and on the date of the SOU and during a period of at least three years and six months after the date of the SOU, Apple offered entertainment services listed in the Registration Certificate on its website under the mark iTunes. The iTunes service is presented as "Your Entertainment. Everywhere."  "iTunes in the Cloud is part of iCloud. It's the new way to store your music and TV shows, and enjoy them on all your devices."

81.    The webpages of Apple's website show the word "apple" used solely as a trade name.

82.    The mark iTunes was used in a manner that created in the minds of potential consumers a direct association between this mark and the entertainment services.

83.    The APPLE MUSIC service was announced on June 8, 2015.

84.    As of October 26, 2018 the marks iTunes and APPLE MUSIC were used to identify Apple's entertainment services.

85.    As of October 26, 2018 Apple's website at www.apple.com shows no use of the Mark for entertainment services listed in the Registration Certificate.

86.    Archived pages of Wikipedia on various dates in 2007, 2011 and 2014 show that Apple didn't offer or provide any services under standard character mark APPLE.

87.    The Mark was not ever used to identify Apple's entertainment services listed in the Registration Certificate.

88.    Entertainment services listed in the Registration Certificate were never announced by Apple under standard character mark APPLE prior to or on the date of SOU or during a period of at least three years and six months after the date of the SOU.

89.    Entertainment services "production of live musical performances" were not provided or announced in the U.S. by Apple until on or about February 19, 2014 when the iTunes Festival was announced.

90.    The iTunes festival was renamed to Apple Music Festival in 2015.

91.    iTunes, APPLE, and APPLE MUSIC are different trademarks.

92.    According to 15 U.S.C. § 1127 "Nonuse for 3 consecutive years shall be prima facie evidence of abandonment".  Defendant's nonuse in commerce and abandonment for the services listed in the Registration Certificate for the Mark is grounds for cancellation under 15 U.S.C. § 1064 and the Registration should be cancelled.

**SECOND CLAIM FOR RELIEF**

**Cancellation of the Mark Due to Fraud in the Procurement
Pursuant to 15 U.S.C. § 1064**

93.    Bertini restates, re-alleges, and incorporates by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

94.    After two extensions of time to file an SOU on November 11, 2011 Apple's Attorney Thomas R. La Perle knowingly and intentionally made specific false, material representations of fact in an SOU filed in connection with Apple's application to register the Mark, with the intent to deceive the USPTO and to obtain a registration to which it was otherwise not entitled.

95. The following statement was made by Mr. La Perle in a signed Declaration which was a part of the SOU dated November 11, 2011 pursuant to 15 U.S.C §1051: "Applicant is the owner of the mark sought to be registered, and is using the mark in commerce on or in connection with the goods/services identified above".

96.    The following statement was made by Mr. La Perle in the SOU dated November 11, 2011 and filed pursuant to 15 U.S.C §1051(d): "The mark is in use in commerce on or in connection with ***all*** goods or services listed in the application or Notice of Allowance or as subsequently modified for this specific class".  Emphasis added.

97.    These statements were specific, namely, that the Mark is in use in commerce for all services listed in the Application.

98.    These statements were false representations of material fact – use of the Mark in commerce for all listed services. These statements were material because without these statements the application wouldn't meet the minimum requirements of 15 U.S.C. § 1051. Without meeting such minimum requirement, the Mark couldn't be registered.

99.    Mr. La Perle and Apple had knowledge about the fact that the Mark is not used in commerce for all services as stated in the Declaration and so representation about use was false.

100.    Mr. La Perle and Apple had intended to induce reliance upon misrepresentations regarding use of the Mark so that Apple could obtain registration of the Mark. These statements were made with the intent to obtain a registration to which Apple was otherwise not entitled.

101.    The USPTO relied on this statement, was deceived, and a Registration Certificate was issued on January 17, 2012.

102.    The USPTO, Bertini, and others are damaged by this registration.

103.    As it is shown above, prior to and on the date of the SOU and during a few years after the date of the SOU Apple didn't use the standard character mark APPLE on or in connection with entertainment services listed in the Registration Certificate.

104.    Bertini's representative has conducted extensive online research and has been unable to locate any use in commerce of mark APPLE by Apple for services listed in the Registration Certificate prior to and on the date of the SOU and after the date of the SOU.

105.    During the Opposition trial Apple didn't produce evidence showing use of standard character mark APPLE for sales or advertising of services listed in the Registration Certificate of the Mark.

106.    The actions of Mr. La Perle and Apple in the procurement of Registration No. 4088195 constitute fraud, thereby invalidating Registration No. 4088195. Accordingly, Registration No. 4088195 should be canceled in its entirety pursuant to 15 U.S.C. § 1064.

**THIRD CLAIM FOR RELIEF**
**Cancellation of the Mark Due to Fraud in the Maintenance**
**Pursuant to 15 U.S.C. § 1064**

107.    Bertini restates, re-alleges, and incorporates by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

108.    On February 22, 2018 a Post Registration Office Action stated that Reg. No 4088195 is selected for audit "to determine whether the mark is in use with all of the services identified in the registration". The condition of audit was: "**If proof of use for the services identified below is not available, the identified services** *and any other services not currently in use* **should be deleted from the registration".**

109.    On August 21, 2018 in Response to Office Action for Post-Registration Matters, Apple's attorney Karen Marie Kitterman made the following statement: "**The owner was**

**using the mark in commerce on or in connection with the goods and/or services identified in the registration for which use of the mark in commerce is claimed, as evidenced by the submitted proof of use, during the relevant period for filing the affidavit of use."**

110.    The statement also read: "The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application, submission, or any registration resulting therefrom".

111.    This statement was false, because Apple didn't use the Mark in commerce on or in connection with entertainment services identified in the registration.

112.    This statement was material. Without this statement Apple would not be able to obtain renewal of its registration for the Mark.

113.    This statement was specific, namely, the owner was using the mark in commerce on or in connection with the services identified in the registration.

114.    This statement was a false representation of material fact – use of the Mark in commerce for all listed services.

115.    Ms. Kitterman and Apple had knowledge about the fact that the Mark is not used in commerce for all services as stated in Response to Office Action and so representation about use was false.

116.    Ms. Kitterman and Apple had intended to induce reliance upon the misrepresentation regarding use of the Mark so that Apple could renew registration of the Mark.

117.    This statement was made with the intent to renew the registration to which Apple was otherwise not entitled.

118.    The USPTO relied on this statement, was deceived, and in the Office Action on September 27, 2018 stated: "Upon review of the response, it has been determined that the evidence of proof of use is acceptable, and therefore the owner has satisfied the requirements of the audit outlined in the February 22, 2018 Office action."

119.    The Mark was not cancelled after the audit because of the false statement regarding its use in commerce, and the USPTO, Bertini and others are damaged because this registration is extant.

120.    The actions of Ms. Kitterman and Apple in Response to Office Action for Post-Registration Matters constitutes fraud, thereby invalidating Registration No. 4088195.

Accordingly, Registration No. 4088195 must be canceled.

**FOURTH CLAIM FOR RELIEF**
**Cancellation of the Mark Due to Fraud in the Maintenance**
**Pursuant to 15 U.S.C. § 1064**

121.   Bertini restates, re-alleges, and incorporates by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

122.   On January 17, 2018 following statement was made by Apple's Attorney Mr. La Perle in a signed Combined Declaration of Use and Incontestability under Sections 8 & 15 filed for renewal of registration of the Mark: "… the mark is in use in commerce on or in connection with **all** of the goods/**all** of the services".

123.   This statement is a false representation regarding a material fact, namely that the mark is in use in commerce. Without such statement renewal for registration would not be issued.

124.   Mr. La Perle and Apple had knowledge that the representation was false because Apple didn't use the Mark in commerce for entertainment services identified in the registration.

125.   Mr. La Perle and Apple had intent to induce reliance upon misrepresentation, because without reliance renewal would not be issued.

126.   This statement was made with the intent to renew the registration to which Apple was otherwise not entitled.

127.   The USPTO relied on this statement, was deceived, and on March 11, 2019 a Notice of Acceptance under Section 8 was issued.

128.   The USPTO, Bertini and others were damaged by the renewal of the Registration.

129.   Apple's action in Post-Registration maintenance of the Mark constitutes fraud, thereby invalidating Registration No. 4088195. Accordingly, Registration No. 4088195 must be canceled.

**FIFTH CLAIM FOR RELIEF**
**Bertini Has Been Damaged by Apple's Fraud and Apple**
**Is Liable For His Damages Pursuant to 15 U.S.C. § 1120**

130.   Bertini restates, re-alleges, and incorporates by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

131.   Bertini has been injured by Apple's procurement of registration of the Mark due to false statements and representations of Mr. La Perle, Ms. Kitterman and Apple.

132.    According to 15 U.S.C. § 1120 a "person" who procures such registration is liable to any person injured for damages.

133.    Therefore Apple, as the least, is liable for damages due to Bertini's injuries.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Charles Bertini respectfully requests the following against Defendant Apple Inc. as follows:

A.    Cancellation of U.S. Registration No. 4088195 for APPLE,

B.    A judgment against Apple Inc. and for Charles Bertini for damages in a sum to be determined,

C.    Such other and further relief as the Court deems just and proper.

June 5, 2024                                    Respectfully submitted,
                                               ZEV HARDMAN
                                               JAMES BERTINI (*pro hac vice pending*)

                                               By: /s/ Zev Hardman
                                               Attorneys for Plaintiff, Charles Bertini

COMPLAINT