Dale Cendali (NY SBN 1969070)
dale.cendali@kirkland.com
Mary Mazzello (admitted *pro hac vice*)
mary.mazzello@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Yan-Xin Li (SBN 332329)
yanxin.li@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500

Attorney for Defendant
*Apple Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| CHARLES BERTINI,<br><br>            Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>            Defendant. | CASE NO. 24-CV-03437-YGR<br><br>**DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFF BERTINI'S MOTION TO AMEND SECOND AMENDED COMPLAINT**<br><br>Amended Complaint Filed Date:  January 28, 2025<br><br>Hearing Date:  December 23, 2025<br>Hearing Time:  2:00 p.m.<br>Judge:        Hon. Yvonne Gonzalez Rogers<br>Courtroom:    1 – 4th Floor |

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND ........................................................................................3

III.    BERTINI'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED
        BECAUSE IT FAILS TO COMPLY WITH THIS COURT'S APRIL 14 ORDER...........6

        A.      The Testimony and Document Bertini Cites that Apple Provided in Discovery
                Do Not Contain New Information or Support a Finding of Fraud on the
                USPTO ...........................................................................................................6

                1.      La Perle's Written Deposition Responses.....................................................7

                2.      Kitterman's Written Deposition Responses..................................................8

                3.      Public Article Apple Produced in Discovery............................................10

        B.      Bertini's Arguments Related to the Specimens of Use and Declarations Apple
                Submitted to the USPTO Are Not New and Do Not Show Fraud on the
                USPTO .........................................................................................................11

                1.      The Specimens and Related Submissions to the USPTO Were Not
                        "Revealed" In Discovery .............................................................11

                2.      The Specimens and Related Submissions to the USPTO Do Not
                        Support a Finding of Fraud .........................................................12

        C.      Bertini's Reliance on Public Information that He Produced During Discovery
                Is Neither New Evidence Revealed in Discovery nor Relevant ............................18

                1.      The Documents Were Not Revealed in Discovery ...................................18

                2.      The Documents Do Not Support a Finding of Fraud................................18

IV.     BERTINI'S PROPOSED AMENDMENT IS A BAD FAITH EXERCISE IN
        FUTILITY AND HIGHLY PREJUDICIAL TO APPLE....................................................21

V.      CONCLUSION.........................................................................................................22

OPPOSITION TO MOTION TO AMEND                                    CASE NO. 24-CV-03437-YGR

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Belstone Cap., LLC v. Bellstone Partners, LLC*,
No. 2:16 Civ. 01124, 2017 WL 1153111 (E.D. Cal. Mar. 28, 2017) ...........................................2, 8

*Bertini v. Apple Inc.*,
Cancellation No. 92068213, 2018 WL 5016953 (T.T.A.B. Oct. 9, 2018) ........................... *passim*

*Bertini v. Apple Inc.*,
Cancellation No. 92068213 (T.T.A.B. April 11, 2019)...................................................................4

*Chiron Corp. v. Abbott Lab'ys*,
156 F.R.D. 219 (N.D. Cal. 1994)...................................................................................................6

*Horsley v. Kaiswer Found. Hosps., Inc.*,
746 F. Supp. 3d 791 (N.D. Cal. 2024) ..............................................................................8, 21, 22

*Nat'l Bakers Servs., Inc. v. Hain Pure Food Co., Inc.*,
207 U.S.P.Q. 701 (T.T.A.B. 1980) ................................................................................................2

*Nunes v. Ashcroft*,
375 F.3d 805 (9th Cir. 2004) .......................................................................................................21

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*,
897 F.3d 1008 (9th Cir. 2018) .......................................................................................................6

*Paris Glove of Canada, Ltd. v. SBC/Sporto Corp.*,
84 U.S.P.Q.2d 1856 (T.T.A.B. 2007) .......................................................................................8, 18

*In re Raychem Corp.*,
12 U.S.P.Q.2d 1399 (T.T.A.B. Aug. 29, 1989) ..............................................................................2

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .....................................................................................................21

*In re Walker Process Equip. Inc.*,
233 F.2d 329 (C.C.P.A. 1956) ..................................................................................................3, 19

*Washington v. Lowe's HIW Inc.*,
75 F. Supp. 3d 1240 (N.D. Cal. 2014) .....................................................................................21, 22

*Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A*,
802 F. Supp. 2d 1078 (N.D. Cal. 2011) .........................................................................7, 8, 12, 13

**Statutes**

15 U.S.C. §1064.............................................................................................................4, 5

15 U.S.C. §1120.............................................................................................................4, 5

**Rules**

Fed. R. Civ. P. 9.................................................................................................................6

Fed. R. Civ. P. 11.....................................................................................................2, 4, 21

**Other Authorities**

McCarthy on Trademarks and Unfair Competition (5th ed.) ..............................................11

Trademark Manual of Examining Procedure § 1202.01................................................3, 19

## I.    INTRODUCTION

This motion for leave marks Plaintiff Bertini's *seventh* attempt to allege fraud on the United States Patent and Trademark Office ("USPTO") in connection with Apple's nearly fourteen-year-old federal trademark registration of the APPLE service mark for educational and entertainment services (Reg. No. 4088195, the "APPLE Registration"). Following his sixth attempt, this Court held that "as with plaintiff's prior complaint, plaintiff does not satisfy the second and third prong of the [pleading standard for fraud] because he does not plead facts that [Apple] knew that [its] representation was false or that it intended to induce reliance on the misrepresentation." Dkt. 69 ("April 14 Order") at 7. This Court therefore dismissed Bertini's fraud claims, ordering that he "may only amend the fraud claims, *if discovery* on the abandonment issue *reveals evidence* that [Apple] knowingly made a false representation to the USPTO about the specimens at issue, *and* that [Apple] intended to induce reliance upon that misrepresentation." *Id*. at 8 (emphasis added).

Bertini's motion for leave to amend should be denied because his proposed Third Amended Complaint (Dkt. 92-06, "PTAC") fails to comply with the April 14 Order. *First*, his fraud allegations do not arise from new evidence "revealed" in discovery. Indeed, out of 94 added paragraphs alleging fraud, Bertini makes only *six* references to information Apple provided during discovery, all of which concern basic facts available to Bertini without discovery (*e.g.*, that the word "Apple" sometimes refers to the company Apple Inc.). The other 88 paragraphs contain a cobbled-together mix of well-trod evidence, arguments, and public information that was available to Bertini at the time of filing his original complaint, but which he only includes now at this late stage of litigation.

*Second*, Bertini does not cite a *single* piece of evidence—let alone evidence revealed in discovery—indicating that Apple "knowingly made a false representation" *or* "intended to induce reliance" thereupon. April 14 Order at 8. Instead, the handful of citations he includes to evidence Apple provided in discovery concern basic facts that have no bearing on fraud. For example, Mr. Bertini cites deposition testimony showing that Apple's in-house attorney Karen Kitterman is highly knowledgeable about trademark prosecution, even though this Court previously held that the "experience level of counsel does not show one way or another whether the counsel in question intended to deceive or had knowledge of falsity." *Id*. The remaining purported evidence is unhelpful (at best) and purposefully misleading (at

worst), as it includes (a) citations to the specimens of use that Apple submitted to the USPTO in connection with the APPLE Registration, all of which comply with the USPTO's processes and demonstrate Apple's *continuous* use of the APPLE mark in connection with relevant services; (b) Wayback Machine preservations from The Internet Archive, which Bertini misrepresents to falsely claim that Apple fabricated specimens of use; and (c) inaccurate citations to Apple's 10-K.

Bertini's motion should also be denied because it fails to meet the requirements for allowing amendment. *First*, the amendment is futile. As discussed, Bertini offers no evidence that Apple acted with the knowledge and intent necessary to establish fraud on the USPTO, and his false and conclusory allegations do not meet the heightened pleading standard for fraud. Rather, Bertini's allegations demonstrate that Apple provided the USPTO with specimens showing exactly how it used the APPLE mark, a strong sign that Apple acted *without* intent to deceive. *Second*, the proposed amendment is asserted in bad faith, as it relies on numerous misstatements and cherry-picked, incomplete quotes from Apple's depositions. Bertini has also already tried to assert fraud six times, without success, yet he nonetheless rehashes many of the same arguments this Court and the Trademark Trial and Appeal Board ("TTAB") have already rejected. Further, he does so despite the TTAB's having previously admonished him to review Rule 11's requirements due to his raising unsupported fraud claims. *Bertini v. Apple Inc.*, Cancellation No. 92068213, 2018 WL 5016953, at *16 (T.T.A.B. Oct. 9, 2018) (the "2018 TTAB Decision"). *Finally,* the motion is belated, as fact discovery ended and expert reports are due in mere weeks.

At bottom, this case is about Bertini's misrepresentation of what it means to use a mark in commerce. Apple, the USPTO, the TTAB, and numerous courts agree that using a distinctive mark, such as APPLE, in combination with a generic or descriptive term, as in APPLE TV or APPLE MUSIC, constitutes use of the distinctive mark. *Belstone Cap., LLC v. Bellstone Partners, LLC*, No. 2:16 Civ. 01124, 2017 WL 1153111, at *7–9 (E.D. Cal. Mar. 28, 2017) (use of the phrase "Bellstone Partners, LLC" constituted use of "Bellstone"); *In re Raychem Corp.*, 12 U.S.P.Q.2d 1399, 1400 (T.T.A.B. Aug. 29, 1989) (specimen displaying TR06AI-TINEL-LOCK-RING supported registration for TINEL-LOCK because the alphanumeric part number and generic designation "Ring" were not essential to the commercial impression of the mark and played no integral role in distinguishing applicant's goods); *Nat'l Bakers*

2

*Servs., Inc. v. Hain Pure Food Co., Inc.*, 207 U.S.P.Q. 701 (T.T.A.B. 1980) (HOLLYWOOD HEALTH FOODS legal equivalent of HOLLYWOOD). It is also well-established that terms can be ***both*** trade names ***and*** marks, as is the case with Nike, Clorox, and numerous other companies. *See* TMEP § 1202.01 ("A designation may function as both a trade name and a trademark or service mark.") (citing *In re Walker Process Equip. Inc.*, 233 F.2d 329, 332, (C.C.P.A. 1956), *aff'g* 102 U.S.P.Q. 443 (Comm'r Pats. Sept. 3, 1954)). Yet despite these precedents, Bertini argues that Apple has never used the APPLE mark in commerce in connection with the services in the APPLE Registration because he alleges (a) combining APPLE with a generic or descriptive terms does not count as use of the APPLE mark, and (b) the word Apple is a trade name that refers solely to the company Apple Inc. The law says Bertini is wrong. But it any case, it is not fraud on the USPTO for Apple to have submitted statements of use to the USPTO based on the USPTO's own well-established authority regarding what constitutes use of a mark in commerce, rather than on Bertini's misrepresentation of use-in-commerce law.

Accordingly, for the reasons stated herein, Apple respectfully requests that this Court dismiss Bertini's motion for leave to amend his complaint with prejudice. Bertini has already amended his complaint twice in this Court to plead fraud, without success, and has raised fraud three prior times before the USPTO without such claims ever proceeding past the pleadings stage. Any further attempt to amend his pleadings is an inefficient use of the resources of everyone involved, including this Court.

## II.    FACTUAL BACKGROUND

This dispute concerns Bertini's long-running efforts to cancel Apple's nearly fourteen-year-old APPLE Registration. Bertini began his cancellation campaign on March 19, 2018, before the TTAB, when he filed a Petition to Cancel the APPLE Registration on the bases of purported abandonment of the APPLE mark for the entertainment services in the APPLE Registration and fraud on the USPTO in connection with the APPLE Registration. *See* PTAC ¶¶9–10. Apple moved to dismiss, and Bertini amended his cancellation petition shortly thereafter. Mazzello Decl., Ex. 1 at 3[1] (TTAB Docket, Entry Nos. 5, 6); *see also* PTAC ¶10. The amended petition asserted *seven* fraud claims and Apple again moved to dismiss. *See* 2018 TTAB Decision at *1; Mazzello Decl., Ex. 1 at 3 (TTAB Docket, Entry No. 7). On October 9, 2018,

---

[1] All exhibits not attached to Bertini's motion or the PTAC are attached to the Declaration of Mary Mazzello filed concurrently herewith.

the TTAB granted Apple's motion, holding that Bertini's fraud claims were "conclusory and not supported by sufficient facts to infer [that] Mr. La Perle acted with the intent to deceive the USPTO." 2018 TTAB Decision at *8. It further warned Bertini "to review Rule 11 of the Federal Rules of Civil Procedure and ensure that he has a sound factual basis for alleging any grounds to refuse registration other than abandonment." *Id*. at *16.

Bertini then attempted to cancel the APPLE Registration a third time before the TTAB, filing his second amended petition on October 28, 2018. Mazzello Decl., Ex. 1 at 3 (TTAB Docket, Entry No. 12). In April 2019, the TTAB dismissed Bertini's claims of fraud on the USPTO, this time with prejudice, reasoning that "[b]ecause the Board has found that Petitioner failed to sufficiently plead his seven asserted counts of fraud in his first amended petition for cancellation and Petitioner has again failed to plead a legally sufficient fraud claim in his second amended petition, the Board finds that granting leave to replead the fraud claim would not serve the interests of justice." Mazzello Decl., Ex. 2 at 3 (Order, *Bertini v. Apple Inc.*, Cancellation No. 92068213 (T.T.A.B. April 11, 2019)) ("2019 TTAB Decision"). This decision left only Bertini's claim of abandonment for trial before the TTAB. Yet after Bertini's full opportunity to take discovery and present his abandonment case, the TTAB rejected this abandonment claim as well, finding he had failed to even make a prima facie showing of abandonment of the APPLE mark.

Bertini appealed the TTAB's abandonment decision to this Court and alleged fraud once more. Specifically, he alleged: (1) Cancellation of the Mark Due to Fraud in the Procurement Pursuant to 15 U.S.C. §1064, based on the Statement of Use Apple submitted to the USPTO in November 2011 in support of its application for registration of the APPLE mark ("2011 SOU Declaration"); (2) Cancellation of the Mark Due to Fraud in the Maintenance Pursuant to 15 U.S.C. §1064 based on a Declaration of Use Apple submitted in January 2018 in connection with maintaining the APPLE Registration ("2018 Maintenance Declaration"); (3) Cancellation of the Mark Due to Fraud in the in the Audit/Maintenance Pursuant to 15 U.S.C. §1064 based on a declaration and specimens Apple submitted to the USPTO in August 2018 in response to a post-registration office action ("2018 OA Declaration"); and (4) Damages Pursuant to 15 U.S.C. §1120 for such purported fraud. Dkt. 4 ¶¶93–133. Importantly, Apple provided the USPTO with specimens showing its use of the APPLE mark with each of these declarations. *See* PTAC ¶¶77(a) (discussing specimen submitted in support of 2011 Statement of Use), 77(d) (discussing specimen

OPPOSITION TO MOTION TO AMEND          CASE NO. 24-CV-03437-YGR

submitted in support of 2018 OA Declaration); 77(e) (same); 77(f) (discussing specimen submitted in support of 2018 Maintenance Declaration). Thus, the USPTO could use this evidence of Apple's use to decide whether to grant registration or renewal.

Apple moved to dismiss all claims in Bertini's original Complaint on October 4, 2024, Dkt. 35, and Bertini filed a First Amended Complaint (Dkt. 43, "FAC") shortly after. Apple timely moved to dismiss the FAC and the Court granted Apple's motion with leave to amend. Dkt. 61. Bertini filed his Second Amended Complaint on January 28, 2025, again asserting abandonment and his same fraud claims. Dkt. 64 ("SAC"). On April 14, 2025, this Court granted Apple's motion as to Bertini's fraud claims, holding:

> Here, as with plaintiff's prior complaint, plaintiff does not satisfy the second and third prong of the test because he does not plead facts that defendant knew that their representation was false or that it intended to induce reliance on the misrepresentation. Although plaintiff alleges that "Apple willfully intended to deceive the USPTO," he again fails to include any facts supporting this assertion.

April 14 Order at 7. This Court permitted amendment *only* "if discovery on the abandonment issue reveals evidence that [Apple] knowingly made a false representation to the USPTO about the specimens at issue, and that [Apple] intended to induce reliance upon that misrepresentation." *Id*. at 8.

Bertini now seeks leave to amend his complaint to reassert those same previously dismissed fraud claims: (1) Cancellation of the Mark Due to Fraud in the Procurement Pursuant to 15 U.S.C. §1064 based on the 2011 SOU Declaration; (2) Cancellation of the Mark Due to Fraud in the Maintenance Pursuant to 15 U.S.C. §1064 based on the 2018 Maintenance Declaration and a 2022 renewal declaration (the "2022 Renewal Declaration"), which Bertini cites for the first time in this proceeding, even though the declaration was publicly available when he initiated this case; (3) Cancellation of the Mark Due to Fraud in the in the Audit/Maintenance Pursuant to 15 U.S.C. §1064 based on the 2018 OA Declaration; and (4) Damages Pursuant to 15 U.S.C. §1120. PTAC ¶¶99–192.

Since the April 14 Order, the parties have undergone seven months of discovery in which Bertini conducted (as he preferred) two written depositions of Apple's senior trademark counsel; served 47 requests for production, in response to which Apple produced 1,104 documents; and served 25 interrogatories, to which Apple timely replied. Despite this extensive discovery, Bertini's proposed Third Amended Complaint does not present a single piece of new evidence "revealed" in discovery that supports

OPPOSITION TO MOTION TO AMEND                                          CASE NO. 24-CV-03437-YGR

a finding of fraud. Accordingly, Apple opposes Bertini's motion to amend.

## III. BERTINI'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED BECAUSE IT FAILS TO COMPLY WITH THIS COURT'S APRIL 14 ORDER

Bertini's motion for leave to amend should be denied for the initial reason that it does not to comply with this Court's April 14 Order. As this Court explained in the April 14 Order, to succeed on a fraud on the USPTO claim, a plaintiff must establish five elements: "1) a false representation regarding a material fact; 2) the registrant's knowledge or belief that the representation is false; 3) the registrant's intent to induce reliance upon the misrepresentation; 4) actual, reasonable reliance on the misrepresentation; and 5) damages proximately caused by that reliance." April 14 Order at 7 (quoting *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1019 (9th Cir. 2018)). Moreover, "Rule 9(b)'s heightened pleading standard applies" to such claims. *Id*. (quoting *Chiron Corp. v. Abbott Lab'ys*, 156 F.R.D. 219, 220 (N.D. Cal. 1994)). Thus, in dismissing the fraud claims in the SAC, this Court held that Bertini "may only amend the fraud claims, if discovery on the abandonment issue reveals evidence that [Apple] knowingly made a false representation to the USPTO about the specimens at issue, and that [Apple] intended to induce reliance upon that misrepresentation." *Id*. at 8.

The purported evidence in the PTAC does not meet this standard. Instead, Bertini cites three categories of evidence: (1) some limited evidence from Apple, namely, basic facts from the deposition testimony of in-house attorneys Thomas La Perle and Karen Kitterman as well as a third-party article that pre-dates this lawsuit; (2) the specimens of use and supporting declarations that Bertini already identified in his prior complaints, as well as the 2022 Renewal Declaration, which was publicly available when he initiated this litigation in mid-2024; and (3) public documents pre-dating the filing of this lawsuit that *Bertini* produced. As discussed below, this evidence contains no material information "reveal[ed]" in discovery, nor does it support a finding that Apple knowingly made misrepresentations to the USPTO or acted with intent to induce reliance, as required under the April 14 Order for Bertini to seek to reallege fraud on the USPTO.

### A. The Testimony and Document Bertini Cites that Apple Provided in Discovery Do Not Contain New Information or Support a Finding of Fraud on the USPTO

Despite this Court's order that Berini could seek to reallege fraud only if discovery "revealed"

relevant information, the PTAC contains only *six* references to evidence Apple provided in discovery:

1. Paragraphs 130 and 144 cite deposition testimony from Thomas La Perle, the Senior Director in Apple's Legal Department managing Apple's Trademark and Copyright Group, who signed the 2011 SOU Declaration and the 2018 Maintenance Declaration;

2. Paragraphs 156, 169, and 179 cite deposition testimony from Karen Kitterman, Apple's Senior Counsel who signed the 2018 OA Declaration; and

3. Paragraph 170 cites to a third-party article that Apple produced in discovery.

None of these citations contain information revealed in discovery that supports a finding of fraud.

### 1.  La Perle's Written Deposition Responses

*First*, Bertini points to La Perle's statement in his deposition that the specimen of use he submitted to the USPTO with the 2018 Maintenance Declaration depicted "a portion of the webpage that was available at www.apple.com/education/apple-professional-learning/ at the time it was preserved." PTAC ¶130. This is not new information and it is not evidence of fraud. The 2018 Maintenance Declaration, which Bertini cited in his prior complaints (Dkt. 4 ¶122, FAC ¶154, SAC ¶¶77(f)), itself states that the specimen was a "screen shot of Registrant's website showing the mark used in the advertising of the services" Mazzello Decl., Ex. 3 at 3 (2018 Maintenance Declaration, "Specimen Description"). The deposition testimony also does not support a finding of fraud. Rather, it affirms that the specimen of use Apple submitted to the USPTO was a valid example of current use available to consumers. As this Court already held, specimen evidence does not support a finding of fraud because "it is unlikely that a party intended to deceive the USPTO by submitting specimens for their review." April 14 Order at 8 (citing *Zero Motorcycles, Inc. v. Pirelli Tyre S.p.A*, 802 F. Supp. 2d 1078, 1088 (N.D. Cal. 2011), *rev'd and remanded on other grounds*, 517 F. App'x 589 (9th Cir. 2013)).

*Second*, Bertini cites La Perle's statement that "the Apple Professional Learning service," i.e., the service identified in the 2018 specimen of use that Apple submitted with the 2018 Maintenance Declaration, "continued in 2024." PTAC ¶144. This, too, is not new information. Rather, anyone visiting Apple's website in 2024, before Bertini initiated this lawsuit, could observe that Apple provided this service in 2024. In fact, Bertini produced a copy of Apple's website showing that Apple offered the Apple Professional Learning service in 2024 at the same time as he served Apple with La Perle's written

OPPOSITION TO MOTION TO AMEND                                    CASE NO. 24-CV-03437-YGR

deposition questions, thus confirming that Bertini could have located—and indeed, did locate—such information on Apple's website without discovery.

Moreover, the statement does not support a finding that Apple made a knowing misrepresentation to the USPTO or sought to induce the USPTO to rely on a misrepresentation. Instead, it is merely an acknowledgement that Apple offered this educational service under the APPLE mark in 2024. Bertini twists himself in knots trying to argue otherwise. Specifically, Bertini claims that with this statement La Perle "acknowledged" that Apple provided this educational service under the purported "unitary mark Apple Professional Learning and not standalone mark Apple," so Apple allegedly committed fraud by claiming the specimen showed use of the APPLE mark. *Id.* The argument is baseless. As an initial matter, the USPTO ***accepted the specimen*** as evidence that Apple used the APPLE mark for educational services. Given that the USPTO agreed that the specimen shows use of the APPLE mark, it could not have been fraudulent for La Perle to say it showed use of the APPLE mark. *See* April 14 Order at 8 (citing *Zero Motorcycles*, 802 F. Supp. 2d at 1088); *see also Belstone*, 2017 WL 1153111, at *7–9 (dismissing "specious at best" fraud claims where plaintiff submitted an accurate specimen to USPTO); *Paris Glove of Canada, Ltd. v. SBC/Sporto Corp.*, 84 U.S.P.Q.2d 1856, 1863 (T.T.A.B. 2007) (where "nothing was concealed or withheld" from the USPTO, there were no "issues of material fact in dispute with respect to respondent's intent").

Further, the deposition contains no such "acknowledge[ment]." Rather, in the deposition, Bertini presented La Perle with a September 23, 2025 preservation of Apple's website for Apple's Education Community. *See* Mazzello Decl., Ex. 4 at Question & Response No. 63. Bertini then asked La Perle whether the exhibit "show[s] that Apple Professional Learning program [sic] continued in 2024." *Id*. at Question No. 64. La Perle responded: "Yes, the webpage . . . is one of the webpages that show that the Apple Professional Learning service continued in 2024." *Id*. at Response No. 64. La Perle thus did *not* "acknowledge[]" that the service was provided under a unitary mark and not the mark APPLE.

### 2.    Kitterman's Written Deposition Responses

Bertini's citations to Kitterman's written deposition fare no better. Rather, Bertini uses these citations to merely recycle arguments and allegations that this Court has rejected. Rehashing old arguments is the definition of "an exercise in futility." *Horsley v. Kaiswer Found. Hosps., Inc.*, 746 F.

Supp. 3d 791, 805 (N.D. Cal. 2024).

**First**, in Paragraph 179 of the PTAC, Bertini mischaracterizes a statement in Kitterman's deposition response to repeat an argument nearly identical to one alleged in his SAC. In the deposition, Bertini asked Kitterman whether a particular reference in the specimen of use she submitted with the 2018 OA Declaration showed use of "Apple" to refer to "Apple Inc.," as one of Bertini's arguments is that "Apple" only refers to the trade name Apple Inc. and is not used a service mark. Mazzello Decl., Ex. 5 at Question No. 7. Kitterman responded:

> There are multiple uses of Apple shown in [the August 21, 2018 specimen]. Although the use of "Apple" in the sentence you quote refers to Apple Inc., the heading of this document uses Apple as a service mark used in providing on-line publications.

*Id*. at Response No. 7. Nonetheless, Bertini cherry-picks a portion of this response to suggest that Kitterman admitted that the specimen does not show service mark use, when she in fact *explicitly stated* that it does. *Id*. Kitterman's statement thus does not indicate fraud on the USPTO; it shows that she believed the specimen showed use of the APPLE service mark, just as she stated to the USPTO. This narrow focus on only one portion of a specimen is nearly identical to what Bertini argued in the SAC, where he claimed that the same specimen "shows use of [the] word 'apple' in reference to Apple Inc." SAC ¶77(d), 137(a). Just as such cherry-picking was insufficient to support fraud allegations in the SAC, it is insufficient here as well. And again, this specimen was accepted by the USPTO.

**Second**, paragraph 169 of the PTAC cites deposition testimony from Kitterman in which she stated that she was not certain whether a webpage printout Bertini made in 2025 from the Wayback Machine—a tool available on the archival website The Internet Archive, which contains historic preservations of webpages—was the same as the webpage she used for the specimen of use showing the Apple Machine Learning Journal, which she submitted with the 2018 OA Declaration. Her inability to authenticate a webpage that *Bertini* created does not show fraud on the USPTO, nor does Bertini claim it does. Instead, he argues that the webpage he preserved from the Wayback Machine links to a *different* webpage containing an article from the Apple Machine Learning Journal, and that this *different* webpage does not have the word "Apple" in the title. PTAC ¶169. This is irrelevant. Regardless of what appears on an admittedly *different* webpage, the specimen Kitterman submitted to the USPTO, and the webpage that Bertini preserved that he claims to be this same webpage, both show use of APPLE as a mark, as confirmed

in the images below. Such deposition testimony is therefore insufficient to establish fraud.



Excerpt of Dkt. 92-03 (Bertini's preservation) at 45.



Excerpt of Dkt. 92-07 (Specimen submitted to USPTO) at 15.

**Third**, Bertini alleges that Kitterman, in her written deposition responses, "demonstrated a high level of knowledge of details of USPTO rules, in particular regarding Section 8 and Section 15 of the maintenance of trademarks." PTAC ¶156. Bertini has already attempted to make the same argument about La Perle (SAC ¶119), which this Court summarily rejected:

> [P]laintiff states that defendant's intent to deceive can be inferred because the fact that its statements were prepared by experienced counsel. This argument does not persuade. The experience level of counsel does not show one way or another whether the counsel in question intended to deceive or had knowledge of falsity.

April 14 Order at 8. Kitterman's knowledge of trademark law is not new information revealed in discovery, and this Court has already held that such knowledge does not establish that Apple "intended to deceive or had knowledge of falsity." *See id.* Bertini's reliance on this deposition testimony is irrelevant.

### 3. Public Article Apple Produced in Discovery

The only other piece of purported evidence provided by Apple that Bertini cites is a third-party news article from July 19, 2017, about the "Apple Machine Learning Journal." PTAC ¶170 & Dkt. 92-04 at 6 (public article produced by Apple). As an initial matter, this is a publicly available document that

OPPOSITION TO MOTION TO AMEND                    CASE NO. 24-CV-03437-YGR

existed long before Bertini filed this lawsuit. He therefore could have included it in his initial Complaint.

Moreover, the third-party news article does not support a finding of fraud. ***First***, the article was not written by Apple and therefore provides no insight into the mental state of any Apple employee. ***Second***, Bertini acknowledges in the PTAC that the article references the "***Apple*** Machine Learning Journal," which shows that even this third party used APPLE as the service mark reflecting the source of this Machine Learning Journal. PTAC ¶170 (citing Dkt. 92-04 at 7) (emphasis added). This article thus supports Apple's position that "APPLE" is a service mark for journals, including the machine learning journal. ***Third***, the parties addressed this very argument in prior briefing. In his SAC, Bertini argued that "Apple" refers to "Apple Inc." because third-party news articles allegedly use "Apple" in this manner. *See, e.g.*, SAC ¶¶72(a), 77(a), 77(d), 77(f), 79, 85(b), 85(f), 86, 96.[2] The Court, having already considered this very argument and Bertini's evidence of third-party articles allegedly evidencing such use of the Apple mark, held that Bertini did "not plead facts that [Apple] knew that their representation was false or that it intended to induce reliance on the misrepresentation." April 14 Order at 7. One additional article, which was available to Bertini at the time of filing his original complaint, does not move the needle beyond the three similar articles cited in Exhibit 5 to Bertini's SAC. *See* SAC ¶72(a). Accordingly, none of the evidence provided by Apple satisfies the requirement in this Court's prior order that Bertini may only allege fraud if evidence "revealed" in discovery supports a finding of a willful misrepresentation or intent to induce reliance on such misstatement. April 14 Order at 8.

**B.    Bertini's Arguments Related to the Specimens of Use and Declarations Apple Submitted to the USPTO Are Not New and Do Not Show Fraud on the USPTO**

1.    <u>The Specimens and Related Submissions to the USPTO Were Not "Revealed" In Discovery</u>

Having failed to identify any new evidence provided by Apple in discovery of a knowing misrepresentation or intent to induce reliance thereupon, Bertini attempts to draw the Court's attention

---

[2] Apple further explained in prior briefing that a term can function as both a trade name and a service mark. Dkt. 65 at 24–25. "It is Trademark 101 that goods and services can have both a house brand and a sub-brand simultaneously as trademarks." *Id*. at 16 (citing 1 McCarthy on Trademarks and Unfair Competition §72–5 (5th ed.)). Therefore, it is not relevant to Bertini's fraud claim that third-parties or Apple occasionally use Apple to refer to the company rather than as a service mark.

OPPOSITION TO MOTION TO AMEND                                    CASE NO. 24-CV-03437-YGR

back to the very same specimens and declarations discussed at length in prior complaints. *See, e.g.*, PTAC ¶¶121, 129, 151, 152, 157. This contradicts the Court's April 14 Order, which permitted Bertini to "amend the fraud claims, if discovery … reveals evidence" of fraud. April 14 Order at 8. Put another way, any purported evidence in the specimens of use and supporting statements could have been included in the original Complaint, FAC, or SAC, yet Bertini did not include them. His effort to do so now is inconsistent with this Court's April 14 Order and, thus, should be rejected.

2.    The Specimens and Related Submissions to the USPTO Do Not Support a Finding of Fraud

Additionally, the specimens and related declarations do not show either that Apple made a knowing misstatement or intended to induce reliance on such statement by the USPTO, as required to establish fraud on the USPTO. Rather, as discussed below, the specimens were accurate and fully complied with USPTO requirements. Bertini's PTAC does not show otherwise.

a.    **The USPTO Reviewed and Accepted These Specimens**

As a threshold matter, *none* of the purported "evidence" Bertini cites concerning the specimens submitted to the USPTO show fraud because the alleged evidence consists entirely of information Apple ***provided to the USPTO*** for it to consider in evaluating the APPLE Registration. As this Court held, "it is unlikely that a party intended to deceive the USPTO by submitting specimens for their review." April 14 Order at 8 (citing *Zero Motorcycles*, 802 F. Supp. 2d at 1088). Here, the evidence Bertini cites confirms that Apple provided specimens of use and all other required information to the USPTO to enable the USPTO to consider and evaluate whether to grant, maintain, and renew the APPLE Registration. *See, e.g.*, PTAC ¶¶104 (Apple filed a Statement of Use), 105 (Apple submitted a specimen of use displaying the text "Welcome to Apple Education Seminars and Events"), 126 (Apple submitted a Combined Declaration of Use and Incontestability), 128 (Apple submitted a specimen of use), 130 (the specimen depicted "a portion of the webpage that was available … at the time it was preserved"), 134 (the specimen included use of the APPLE mark within "Apple Professional Learning"), 151 (Apple filed a Combined Declaration of Use and Application for Renewal in 2022), 152 (Apple included a specimen of use, and provided the access date and URL of the specimen in its declaration), 155 (the specimen included use of the APPLE mark multiple times in "Apple Professional Learning"), 168 (Apple submitted two specimens as part of

12

its response to a post-registration office action), 173 (one of the specimens demonstrated use of the APPLE mark within "APPLE MUSIC PRESENTS"), 177 (the specimen demonstrates advertising of a P!nk concert). Therefore, there was no fraud, as Apple revealed to the USPTO the exact nature of its use. *See, e.g.*, *Zero Motorcycles*, 802 F. Supp. 2d at 1088 (no fraud where applicant submitted accurate specimen).

> **b.** **Bertini Incorrectly Asserts that Apple "Hid" the URL for the Specimens Apple Submitted to the USPTO**

Bertini's argument that this Court should infer fraudulent intent because the specimens Apple submitted to the USPTO do not have URLs on them also fails because there was no requirement to include URLs at the time Apple submitted these specimens. *See, e.g.*, PTAC ¶¶121, 152.

Bertini cites the specimens of use submitted in 2011 (*id.*, ¶121), 2018 (*id.*, ¶¶128, 145), and 2022 (*id.*, ¶152). Prior to 2020, there was no requirement that applicants include the URL for their specimens. *See* Mazzello Decl., Ex. 6 at 1–2 (USPTO webpage) (explaining under the headings "When did this rule become effective?" and "Were the requirements for acceptable specimens affected by this new rule?" that the "specimen rule changes" going into effect on "February 15, 2020" included "[r]equiring the URL and the access or print date of all webpage specimens"). Thus, contrary to Bertini's claim, Apple was not hiding anything or "prevent[ing] the examiner from navigating to pages" where Apple offered the services by not including the URL. PTAC ¶121. Instead, Apple was complying with the USPTO's rules. In any case, Bertini's argument that the examiner was "prevent[ed]" from navigating to relevant pages is belied by Bertini's PTAC and motion for leave to amend, which both admit that, by using only the information Apple provided to the USPTO, he was able to find the very webpages he claims Apple "prevent[ed]" the examiner from viewing. PTAC ¶¶106–108, 121.

The 2022 submission similarly complies with the USPTO's requirements. Although the USPTO began requiring applicants to submit their URLs in 2020, it explicitly stated that "The URL and access or print date can be shown directly on the specimen webpage itself, appearing anywhere on the page, *or within the online application that submits the specimen*." Mazzello Decl., Ex. 6 at 3 (USPTO webpage, bullet point six). In 2022, Apple included the URL information in the supporting online declaration, exactly as required. PTAC ¶152. Bertini makes much of the fact that this URL appears to include reference to Canada. *Id*. But that does not show *fraud*; quite the opposite, it shows that Apple provided the USPTO

with the exact location of the website. If the USPTO was concerned about the specimen or URL, it had all information necessary to say so. Thus, rather than showing a knowing misstatement or intent to induce reliance, this URL confirms that Apple provided the USPTO full and complete information from which the USPTO could assess Apple's specimen. *See* April 14 Order at 8 ("it is unlikely that a party intended to deceive the USPTO by submitting specimens for their review.").

c.        **Bertini Baselessly Alleges that Apple Fabricated Specimens Submitted to the USPTO**

Without ***any*** proof, Bertini makes the very serious allegation that Apple fabricated the specimens it submitted to the USPTO. This false accusation rests on nothing more than Bertini's misunderstanding of how the Safari browser and the Internet Archive's Wayback Machine work. Indeed, it is telling that, despite deposing both of Apple's in house attorneys who submitted the specimens, Bertini did not ask either of them whether the specimens they submitted to the USPTO had been altered or modified in any capacity. Nor is there a shred of testimony or documentary evidence showing they were. His allegations are improper and should be rejected.

***First,*** Bertini alleges that the specimens submitted on January 17, 2018 and January 14, 2022 are "fabrications" because the URL bar at the top of the page displays "Apple Inc." in green font, with a padlock icon (as shown below). Such allegations reflect a misunderstanding as to how the Safari browser worked at the time of preservation.



Dkt. 92-3 at 24 (Bertini Ex. 16) (Apple's January17, 2018 specimen) (excerpt); PTAC ¶¶145, 159. At the time of preservation, Safari signaled to users that a webpage bore an Extended Validation (EV) SSL certificate (a high-security digital certificate that verifies a website's identify) by displaying a green padlock icon and the company name in green font in the URL bar. *See* Mazzello Decl., Ex. 7 at 1–2 (GeoCerts Webpage). Therefore, rather than indicating a fabrication, the icon shows that Apple submitted

a printout of a webpage with a verified identity to the USPTO.

Bertini also does not mention that Apple produced a preservation of the Apple Professional Learning website dated December 22, 2017 just weeks before submission of the January 2018 specimen.



Mazzello Decl., Ex. 8, at '7517. Therefore, contrary to Bertini's false statement that the website shown in the January 2018 specimen of use "was not available for public view," it was. And Bertini *knew this* when he submitted the PTAC to the Court because he received the documents dated December 2017, which confirmed their public availability as of that date, in discovery.

**Second,** Bertini's argument (¶¶129–133) that Apple's January 17, 2018 specimen of use for the Apple Professional Learning service was fabricated because the Wayback Machine does not contain preservations of this web page for that date also falls short. As just described, Apple produced evidence that the web page was available starting at least as early as December 2017, but Bertini disregards this evidence. Further, contrary to Bertini's suggestion, the Internet Archive does not include preservations of every web page from every day of the year. The Wayback Machine itself states:

Not every date for every site archived is 100% complete. When you are surfing an

incomplete archived site the Wayback Machine will grab the closest available date to the one you are in for the links that are missing.

Mazzello Decl., Ex. 9 at 4 (Wayback Machine Help Page). Therefore, the lack of preservation in the Wayback Machine does not establish that the web page did not exist. In fact, the Wayback Machine cautions against such faulty logic: "This calendar view maps the number of times [this link] was crawled by the Wayback Machine, *not* how many times the site was actually updated." Mazzello Decl., Ex. 10 at 2 (Wayback Machine Captures Calendar). It also does not matter that the Wayback Machine frequently crawled the main "apple.com" website. *See* PTAC ¶¶132–33. The subpage in the specimen is www.apple.com/education/apple-professional-learning not "apple.com." *See* Mazzello Decl., Ex. 8, at '7517. Navigating to this particular page on the Wayback Machine indicates that it was only "[s]aved 9 times between May 14, 2018 and June 1, 2023." Mazzello Decl., Ex. 10 at 1 (Wayback Machine Captures Calendar).

*Third,* Bertini accuses Apple of altering the "screen capture" submitted to the USPTO on January 14, 2022 because the capture differs from the Internet Archive's Wayback Machine preservation of the same webpage. PTAC ¶160 (claiming there are "gap[s]" spanning "several lines" around the heading in one version that are absent from the other). This argument, at best, reflects a misunderstanding of the Wayback Machine, and, at worst, shows Bertini's knowing effort to mislead this Court about the nature of the Wayback Machine archive by intentionally suggesting it is a perfect preservation of the layout of a website when it is not. Indeed, the Internet Archive *itself* explains to users that variations in formatting can make sites difficult to archive, resulting in "broken pages" or "missing graphics" within the preservations. Mazzello Decl., Ex. 9 at 3 (Wayback Machine Help Page, "Why are some sites harder to archive than others?"). Thus, that the Internet Archive's preservation differs visually from the preservation of Apple's website that Apple made at the time it submitted its specimen to the USPTO does not in any way demonstrate fabrication. Bertini's meritless accusation should be rejected.

It is also important to note that regardless of formatting variation, both Apple's specimen and the Internet Archive's Wayback Machine preservation from Bertini contain the ***same content***, and therefore show use of the APPLE mark in connection with Apple's services in the exact same way:



Dkt. 92-03 at 24 (Bertini Ex. 16) (Apple's Jan. 14, 2022 Specimen) (excerpt).



Dkt. 92-03 at 27 (Bertini Ex. 17B) (Wayback Machine preservation) (excerpt).

Therefore, despite Bertini's allegations of fabrication of the specimen, his **own evidence** from the Wayback Machine shows that Apple used the APPLE mark exactly as it claimed—the mark appears in the phrase "Apple Professional Learning" in connection with educational services. Apple did not fabricate anything.

**Finally**, this argument again defies this Court's order, as it includes *no new evidence revealed in discovery*. Bertini instead cites to Apple's publicly-filed specimens and declarations and other public evidence that were all available long before Bertini initiated this lawsuit. *See, e.g.*, Compl. ¶122 (discussing Declaration of Use and Incontestability filed January 17, 2018); FAC ¶154 (discussing same); SAC ¶¶77f (discussing specimen submitted January 17, 2018).

### d.      Apple Did Not Use Arrows on Its Specimen to Deceive the USPTO

Bertini's argument that Apple placed a purportedly "deceptive arrow" pointing to the word "Apple" in the specimens to allegedly "induce reliance" on a misrepresentation also fails. PTAC ¶162 (January 14, 2022); *see also id*. ¶¶147 (January 17, 2018 specimen), 180 (August 21, 2018 specimen), 183 (same). The arrows do not misrepresent the specimens or conceal any information from the USPTO examiner. It is not, therefore, fraudulent to include them. *See, e.g.*, April 14 Order at 8 ("it is unlikely that

17

a party intended to deceive the USPTO by submitting specimens for their review"); *Paris Glove*, 84 U.S.P.Q.2d at 1863 (where "nothing was concealed or withheld" from the USPTO, there were no "issues of material fact in dispute with respect to respondent's intent"). Rather, placing an arrow like this is a common, helpful practice, as it allows USPTO examiners know where to find the mark in the specimen.

**C.**     **Bertini's Reliance on Public Information that He Produced During Discovery Is Neither New Evidence Revealed in Discovery nor Relevant**

Lastly, Bertini asks this Court to take judicial notice of a host of publicly available webpages, none of which support Bertini's motion to amend.

**1.     The Documents Were Not Revealed in Discovery**

As an initial matter, Bertini could have referenced all of these documents in his original, first amended, or second amended complaint, as they are all public documents that existed before he initiated this lawsuit. For example, Bertini cites two declarations signed by La Perle that were filed in 2011, a Form 10-K filed by Apple with the SEC for fiscal year ending September 29, 2018, and a Wayback Machine capture preserved on May 14, 2018. PTAC ¶¶111 (2011 La Perle declaration), 141 (same), 139 (2018 10-K), 132 (2018 Wayback Machine capture). For this reason alone, amendment to include a fraud claim based on these documents should be denied, because this public information was not "revealed in discovery."

**2.     The Documents Do Not Support a Finding of Fraud**

The public documents produced by Bertini also do not support a finding of fraud, for the reasons discussed below.

**a.     Citations to Apple's Oppositions and Prior Lawsuits**

Bertini asks this Court to consider oppositions and declarations Apple submitted in unrelated proceedings involving third-party marks to support his fraud on the USPTO claims. None of these documents are relevant to fraud.

***First***, Bertini cites Apple's opposition to third party Ernest Owens' trademark application for APPLEJAXX, which Apple initiated on July 14, 2008, to argue that Apple made a material misrepresentation to the USPTO in connection with the APPLE Registration by stating "no other person … has the right to use the [APPLE] mark in commerce, either in the identical form thereof or in such near

resemblance thereto as to be likely … to cause confusion." PTAC ¶100. This argument is meritless, as the third party did *not* have the right to use the APPLE mark, nor does Bertini identify any proof that Apple believed this individual had the right to use the mark and, thus, made a knowingly false statement to the USPTO as required to establish fraud. Rather, Bertini's own PTAC acknowledges that Apple opposed the application for the APPLEJAXX mark precisely because Apple believed this third party did *not* have the right to use the mark in connection with the services identified in the APPLEJAXX application and using the mark for such services would infringe Apple's preexisting rights. *Id*. ¶101. Notably, because of Apple's opposition and in recognition of Apple's prior rights in the APPLE mark, Owens subsequently amended his application for registration to narrow the relevant services to "live performances by the musician Ernest Owens" and "performing live musical concerts featuring Ernest Owens," such that his use and registration would not be likely to cause confusion with the APPLE mark.[3] Mazzello Decl., Ex. 11 at 2.

*Second*, Bertini cites two declarations La Perle submitted in unrelated litigations in which Bertini alleges La Perle used the term "Apple" in reference to "Apple Inc." PTAC ¶¶111, 141. These declarations are irrelevant, as terms can function as *both* trade names *and* trademarks. *See* TMEP § 1202.01 ("A designation may function as both a trade name and a trademark or service mark.") (citing *Walker Process Equip.*, 233 F.2d at 332). La Perle explained as much in his deposition:

> Apple, like many companies, uses Apple as part of its corporate name and as a trademark or service mark for its goods and services. Other companies with similar naming conventions include Microsoft Corporation, Nike, Inc., and Oracle International Corporation. Given the prevalence of companies that use the same word in their corporate name and as a trademark and/or service mark, it is widely recognized in trademark law that words can function as both corporate names and as service marks or trademarks.

Mazzello Decl., Ex. 4 at Response No. 1. Therefore, La Perle's use of Apple as a trade name in some circumstances does not establish Apple committed fraud by stating that APPLE functions as a service mark in other contexts.

---

[3] Bertini does not reference this narrowed identification of services in his PTAC, and instead states only that "Apple could not stop the registration of the APPLEJAXX mark for entertainment services and it was registered on October 21, 2008." PTAC ¶116.

---

19

OPPOSITION TO MOTION TO AMEND                    CASE NO. 24-CV-03437-YGR

### b.    Public Registrations

Bertini's reference to third-party Joseph Dean Figley's APPLE JAM registration is similarly irrelevant to Bertini's fraud claims. PTAC ¶116. Bertini appears to cite this third-party registration to support his allegation that La Perle "was highly motivated to register the single word mark Apple for entertainment services to prevent additional registrations of marks comprising the word 'apple' in this field." PTAC ¶116. Such speculation based on a single third-party registration proves nothing and falls well short of satisfying the Section 9(b) pleading standard for establishing fraud on the USPTO. Furthermore, this speculation does not hold water. Contrary to Bertini's suggestion, Apple did not need the APPLE Registration to prevent other third-parties from registering APPLE-formative marks. APPLE has longstanding common law rights as well as numerous registrations for APPLE that long predate Joseph Dean Figley's application to register the APPLE JAM mark. Bertini's unsupported allegations about Apple's purported "motivations" do not carry his pleading burden.

### c.    Apple's Public Filings to the SEC

Finally, Bertini points to Apple's 10-K filing with the SEC to argue that Apple committed fraud because the 10-K allegedly does not include uses of the APPLE mark as a service mark for entertainment or educational services. Bertini is wrong. *First,* as a threshold matter, the filings existed before Bertini started this action and were not revealed in discovery. *Second,* Apple's 10-K filing is made to comply with the U.S. Securities and Exchange Commission's requirements that a public company provide a comprehensive summary of its financial performance, not a comprehensive list of all the marks the companies uses. It has no bearing on Apple's marketing language toward consumers. *Third*, the excerpt Bertini included in fact ***does show*** use as a service mark multiple times, for example, under "Services" it notes:

> Apple Music offers users a curated listening experience with on-demand radio stations that evolve based on a user's play or download activity and a subscription-based internet streaming service that also provides unlimited access to the Apple Music library.

Dkt. 92-03 at 9–13 (Bertini Ex. 14). Thus, contrary to Bertini's claim, the filing shows service mark use of the APPLE mark.

***Finally,*** regardless of the information included (or not) in the 10-K, Bertini's amended complaint still lacks two essential elements of a claim for fraud on the USPTO: (a) a knowing misrepresentation to

20

the USPTO, and (b) intent to induce reliance on such misstatement. There is no evidence from which to conclude that Apple made any knowing false statement to the USPTO or that it intended to induce reliance on any such falsity. Bertini's motion to amend should thus be denied for failing to comply with this Court's April 14 Order.

## IV.     BERTINI'S PROPOSED AMENDMENT IS A BAD FAITH EXERCISE IN FUTILITY AND HIGHLY PREJUDICIAL TO APPLE

The Court should dismiss Bertini's motion for leave to amend his complaint for the second independent reason that the factors courts consider in assessing whether to allow amendment do not favor Bertini. Typically, the "'general rule' allowing amendment of pleadings 'does not extend to cases in which any amendment would be an exercise in futility, [] or where the amended complaint would also be subject to dismissal.'" *Horsley*, 746 F. Supp. 3d at 805 (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998)). "[I]n determining whether to grant a motion to amend, the Court considers five factors: '(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint.'" *Washington v. Lowe's HIW Inc.*, 75 F. Supp. 3d 1240, 1254 (N.D. Cal. 2014); *see also Horsley*, 746 F. Supp. 3d at 805. "Futility alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004); *see also Steckman*, 143 F. 3d at 1298. None of the factors favor Bertini.

**Bad faith**: This Court has previously held that Bertini failed "to include any facts" supporting his assertion that Apple "intended to deceive the USPTO." April 14 Order at 7. Rather than including facts of intent in his PTAC, Bertini instead mischaracterizes the deposition responses of Apple employees and misrepresents the relevance of third-party sources, such as the Wayback Machine. *See, e.g.*, PTAC ¶¶144 (incorrectly asserting La Perle "acknowledged [a] service was provided under unitary mark … and not standalone mark Apple"), 145 (arguing that Safari's indication of an EV SSL certificate is evidence of "[f]abrication"), 159 (same), 160 (arguing that re-formatting of a Wayback Machine capture is a "sign of alteration" of a specimen), 179 (cherry-picking a phrase from Kitterman's deposition response to incorrectly suggest she "recognized" that a specimen did not demonstrate use of the APPLE mark). Bertini was previously warned by the TTAB to review Rule 11 before raising unsupported allegations of fraud. 2018 TTAB Decision at *16. His reliance on misinformation reflects a bad faith attempt to again raise this

unsupported claim.

**Undue delay**: As discussed, *supra*, Bertini alleges *no* information that was unavailable to him at the time of filing his original complaint other than a few immaterial statements from Apple's depositions that appear in just five of the nearly 100 new paragraphs in Bertini's complaint. Yet he now attempts to amend his complaint to include new allegations late in litigation, *after* depositions have taken place, after the close of fact discovery, and mere weeks before expert reports are due. Dkt. 88. The amendment comes too late and would derail proceedings as the parties would be forced to redo discovery and delay all upcoming deadlines.

**Prejudice**: For similar reasons, Apple would be prejudiced by being forced to respond to a Third Amended Complaint alleging four additional counts at this late stage of litigation. Furthermore, at least one Court in this district has held that a plaintiff "should not be required to oppose a new complaint that the Court already knows to be wholly defective as a matter of law." *Horsley,* 746 F. Supp. 3d at 806.

**Futility:** For the reasons discussed above, amendment is futile, as none of the purported new evidence supports a finding of fraud. A recent case in this District, *Horsley v. Kaiser Foundation Hospitals*, is instructive. 746 F. Supp. 3d 791. In *Horsley*, the plaintiff filed a motion for leave to file a third amended complaint adding a cause of action based on a "new theory," but absent new controlling case law or additional evidence. *Id*. at 806. The court denied the motion, holding that "amendment would prove futile." *Id*. So, too, here. Bertini alleges *no* additional case law supporting his views, nor can he point to any evidence (newly produced during discovery or otherwise) that supports his fraud claims. Amendment would therefore be futile.

**Previous amendments**: This is Bertini's fourth attempt to raise fraud on the USPTO claims before this Court, and his seventh attempt including proceedings before the TTAB. Because he has asserted fraud claims ***seven*** times, yet continues to be unable to establish the elements to support a fraud claim, his motion for leave to amend should be denied with prejudice. *See Washington*, 75 F. Supp. 3d at 1254 (leave to amend denied where it had previously been granted once).

## V.   CONCLUSION

Apple respectfully requests that the Court deny Bertini's motion to amend his complaint with prejudice.

DATED:  November 26, 2025

Respectfully submitted,

*/s/ Dale M. Cendali*

Dale Cendali (SBN 1969070)
dale.cendali@kirkland.com
Mary Mazzello (admitted *pro hac vice*)
mary.mazzello@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900

Yan-Xin Li (SBN 332329)
yanxin.li@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone:   (415) 439-1400
Facsimile:   (415) 439-1500

OPPOSITION TO MOTION TO AMEND

CASE NO. 24-CV-03437-YGR

## CERTIFICATE OF SERVICE

On November 26, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

/s/ Dale M. Cendali
Dale M. Cendali

OPPOSITION TO MOTION TO AMEND                    CASE NO. 24-CV-03437-YGR